UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

February 10, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CM**

DEPUTY

| | | |
|---|---|---|
| LUIS CRUZ VARGAS, | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| v. | § | 5:26-CV-00512-MA |
| | § | |
| PAMELA BONDI, et al, | § | |
| | § | |
| Respondents-Defendants. | § | |
| | § | |

## OPINION AND ORDER

The Court now considers Petitioner Luis Cruz Vargas's ("Petitioner") "Petition for Writ of Habeas Corpus."[1] Petitioner, who is currently in immigration detention, alleges that Respondents are holding him in unlawful custody cognizable in habeas corpus under 28 U.S.C. § 2241 and seeks immediate release.[2] Upon reviewing the petition, response, and applicable law, the Court **GRANTS** Petitioner's writ.

### I.    FACTUAL BACKGROUND

Petitioner is a citizen and national of Mexico.[3] Petitioner obtained lawful permanent resident status in 1987.[4] In 1992, Petitioner was convicted of federal conspiracy to export firearms and ammunition from the United States to Mexico pursuant to 18 U.S.C. section 371.[5] He was sentenced to ten months of imprisonment and three years of supervised release.[6] Petitioner lost his lawful permanent residence status due to this conviction, and a judge ordered his removal from the

---

[1] Dkt. No. 1.
[2] Dkt. No. 1, at 5–6.
[3] Dkt. No. 1, at 5.
[4] Dkt. Nos. 1, at 9; 1-2, at 2.
[5] Dkt. Nos. 1, at 9, 1-2, at 2.
[6] Dkt. No. 1, at 9.

United States on March 28, 2000.[7] Petitioner re-entered the United States shortly after, and was again removed on July 15, 2007.[8] Petitioner again re-entered the United States unlawfully, and was ultimately apprehended by the Department of Homeland Security and issued a Notice of Intent/Decision to Reinstate his Prior Removal Order on July 11, 2012.[9]

An asylum officer determined that Petitioner had a credible fear of persecution or torture if Petitioner was returned to Mexico on October 26, 2012.[10] However, on April 4, 2013, an immigration judge determined that Petitioner was not eligible for asylum.[11] The immigration judge additionally found Petitioner ineligible for withholding of removal under the Convention Against Torture due to his 1992 conspiracy conviction, but found him eligible for deferral of removal to Mexico.[12] DHS appealed this decision unsuccessfully.

Since Petitioner's deferral of removal, Petitioner has lived under immigration supervision, working part-time as a mechanic at Hyundai for over ten years.[13] Petitioner is married to a United States citizen, and is the father of five adult children, all of whom are United States citizens.[14] He has never missed a check-appointment with U.S. Immigration and Customs Enforcement ("ICE"), nor has he had any new charges or convictions since his final removal order was issued.[15]

On July 17, 2025, Petitioner was arrested and detained by ICE after reporting for a scheduled check in.[16] ICE attempted to compel Petitioner to sign papers consenting to voluntary departure to Mexico. Petitioner refused and asked to speak with his attorney.[17] This request was

---

[7] Dkt. No. 1, at 9.
[8] Dkt. No. 1-2, at 1.
[9] Dkt. No. 1, at 9.
[10] Dkt. No. 1, at 10.
[11] Dkt. Nos. 1, at 10; 1-2.
[12] Dkt. Nos. 1, at 10; 1-2.
[13] Dkt. No. 1, at 8.
[14] Dkt. No. 1, at 5, 8.
[15] Dkt. No. 1, at 10–11.
[16] Dkt. No. 1, at 11.
[17] Dkt. No. 1, at 11.

denied, and Petitioner was transferred to the South Texas ICE Processing Center in Pearsall, Texas, and has remained in detention since.[18] Petitioner's counsel has since submitted a request for Petitioner's release, which was denied based on the "totality of circumstances" of Petitioner's past criminal convictions and immigration history.[19] Respondents have informed Petitioner that they are looking for a third country to remove him to, but other than asking him to sign voluntary removal papers have not informed him of any other actions they have taken to facilitate his removal.[20]

Petitioner argues that his current detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, which authorizes detention after the initial 90-day period following an order for removal for only "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States."[21] Petitioner argues that Respondents' efforts to remove him to a third country have been abstract and speculative, and that his removal is therefore not reasonably foreseeable enough to justify his continued detention.[22] Petitioner further alleges that Respondents have failed to conduct a meaningful review of his continued detention in violation of their own regulations regarding continued detention following a final removal order.[23] Petitioner alleges that his continued detention violates his due process rights; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a); the agency's own policies and regulations; and the Administrative Procedures Act.[24]

Respondents, in turn, argue that Petitioner cannot meet his burden of demonstrating that his removal to a third country is "unlikely in the reasonably foreseeable future" in light of the

---

[18] Dkt. No. 1, at 11.
[19] Dkt. Nos. 1, at 12; 1-5, at 1.
[20] Dkt. No. 1, at 11–12.
[21] *Zadvydas v. Davis*, 533 U.S. 678, 689, 701 (2001).
[22] Dkt. No. 1, at 16-19.
[23] Dkt. No. 1, at 16-17; see also 8 C.F.R. section 241.4.
[24] Dkt. No. 1, at 22-26.

affirmative steps they are taking to facilitate his removal.[25] Respondents allege that, due to Petitioner's criminal conviction from 1992, his continued detainment is warranted because he poses a danger to the community.[26] Respondents further argue that Petitioner's removal is reasonably foreseeable in light of the numerous Form I-241 Requests for Acceptance of Alien forms ICE Enforcement and Removal Operations ("ERO") has submitted to various third countries.[27]

## II.    JURISDICTION AND LEGAL STANDARD

A writ of habeas corpus is used to challenge an arrest, commitment, detention, extradition, bail, or the jurisdiction of a criminal sentence.[28] Under 28 U.S.C. § 2241, district courts may hear habeas corpus challenges to the legality of the detention of noncitizens.[29] The petitioner bears the burden of proving, by preponderance of the evidence, that he is being held contrary to the law.[30]

Petitioner is detained at the South Texas ICE Processing Center in Pearsall, Texas, within the Western District of Texas.[31]

Respondents allege that their decision to continue Petitioner's detention past the 90-day removal period is protected from judicial review by 8 U.S.C. § 1252(a)(2)(B).[32] It is not. Section 1252(a)(2)(B) limits the ability of courts to review decisions regarding the granting of relief from removal "notwithstanding . . . habeas corpus provision[s]."[33] Petitioner is not challenging

---

[25] Dkt. No. 5, at 1 (citing *Andrade v. Gonzalez*, 459 F.3d 538, 543-44 5th Cir. 2006); *Gonzalez v. Gills*, No. 20-60547, 2022 WL 1056099 at 1 (5th Cir. Apr. 8, 2022)).

[26] Dkt. No. 5, at 3.

[27] Dkt. No. 5, at 2–3.

[28] *See Habeas Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019); 28 U.S.C. § 2241.

[29] *Rasul v. Bush*, 542 U.S. 466, 473 (2004); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("The writ . . . provide[s] a means of contesting the lawfulness of restraint and securing release.").

[30] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)).

[31] Dkt. No. 1, at 3.

[32] Dkt. No. 5, at 1.

[33] 8 U.S.C. § 1252(a)(2)(B).

Respondent's authority to grant specific kinds of discretionary immigration relief, such as waiving certain grounds for criminal inadmissibility, waiving a finding of fraud or misrepresentation, cancelling a removal, initiating a voluntary departure, or adjusting status.[34] He instead challenges the constitutionality of his continued detention.[35] Jurisdiction is properly laid with this Court.

### III.  ANALYSIS

Petitioner argues his detention is illegal under *Zadvydas v. Davis*, because his removal is not reasonably foreseeable.

"[T]he Government ordinarily secures [a noncitizen]'s removal during a subsequent" ninety days of the noncitizen's final removal order, during which time the noncitizen is usually detained.[36] After the initial ninety-day period, the Government may continue to detain the noncitizen so long as detainment is "reasonably necessary" to secure said removal.[37] The Supreme Court in *Zadvydas* has found that it is "presumptively reasonable" to detain a noncitizen for six months.[38] However,

> After this 6-month period, once the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every noncitizen not removed must be released after six months. To the contrary, a noncitizen may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

---

[34] 8 U.S.C. § 1252(a)(2)(B)(i).
[35] *Zadvydas*, 533 U.S. at 688 ("[H]abeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").
[36] *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1).
[37] *Zadvydas*, 533 U.S. at 699; 8 U.S.C. § 1231(a)(6).
[38] *Zadvydas*, 533 U.S. at 699–701.

*Zadvydas*, 533 U.S. at 701.

Petitioner has adequately demonstrated that there is good reason to believe removal is not significantly likely in the reasonably foreseeable future. As Petitioner makes clear in his petition, he cannot be removed to Mexico, his country of origin. [39] Petitioner agues, and the Court agrees, that Respondents' repeated efforts to pressure Petitioner to consent to voluntary departure to Mexico over the course of his detention suggest that Respondents have not presently identified a third country to which Petitioner may be removed. [40] Finally, Petitioner points to historic statistics on third country removals, noting that in 2017, during which less than two percent of all individuals granted withholding of removal were ultimately deported to a third country. [41] The Court finds that these factors, taken together, provide good reason to believe that Petitioner's removal is not reasonably foreseeable at this time.

Respondents provide two main arguments in support of Petitioner's continued detention: Petitioner's past conviction, which they allege makes him a danger to the community, and Respondents' efforts to secure a third country to which Petitioner can be removed. The Court finds neither of these arguments persuasive.

Under 8 C.F.R. § 241.4, ICE is required to conduct a custody review of noncitizens with final orders of removal before the initial 90-day detention period expires and again once a noncitizen has been detained for 180 days. [42] During this custody review, the agency must assess whether continued detention is warranted in light of the totality of circumstances, including the noncitizen's criminal history, immigration history, institutional behavior, history of compliance

---

[39] Dkt. Nos. 1, at 10; 1-2.
[40] Dkt. No. 1, at 17–18.
[41] Dkt. No. 1, at 18 (citing AM. IMMIGR. COUNCIL, THE DIFFERENCE BETWEEN ASYLUM AND WITHHOLDING OF REMOVAL 8 (Jan. 2020).
[42] 8 C.F.R. § 241.4.

with agency requirements, cooperation with removal proceedings, and any other information probative of the alien's likelihood of "adjusting to life in a community" to determine whether continued detention is warranted because the individual poses a flight risk or a danger to the community.[43]

The Court questions the extent to which Respondents conducted this assessment. Assistant Field Office Director's November 28, 2025 letter to Petitioner's counsel noted only in language vague to the point of boilerplate that "the totality of circumstances do not support favorable exercise of discretion."[44] Respondents appear to indicate that Petitioner's continued detention was predicated on his 1992 conviction and prior history of re-entering the United States after being removed, though they fail to provide how this outweighs his much more recent total compliance with agency requirements and absence of criminal conduct since his 2012 removal order. The Court struggles to conceive how a conviction over three decades old and a past history of unlawful re-entries outweighs a decade of model behavior and compliance with agency regulations. However, the Court does not reach the question of whether Respondents complied with their own agency regulations, as Petitioner's detention would be unlawful even assuming the totality of the circumstances favored continued detention.

The totality of circumstances analysis under 8 C.F.R. 241.4 is only relevant so long as there is a "significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[45] As soon as there is no significant likelihood of removal in the reasonably foreseeable future, *Zadvydas* controls and the noncitizen must be released, absent certain exceptions, such as the noncitizen being considered "specially dangerous" because he has committed a crime of

---

[43] 8 C.F.R. § 241.4.
[44] Dkt. Nos. 1, at 12; 1-5, at 1.
[45] 8 C.F.R. § 241.4; *see also* 8 C.F.R. § 241.13.

violence.[46] Because Petitioner has been detained over six months, detention is presumptively unreasonable, and Respondents bear the burden of demonstrating that there is significant likelihood of his removal in the reasonably foreseeable future.[47] The Court concludes that Respondents have failed to satisfy this burden.

After Petitioner was detained on July 17, 2025, ERO submitted four Form I-241 "Request for Acceptance of Alien." Knowing that Petitioner could not be removed to Mexico, ERO nonetheless waited a month before seeking removal to a third country. It sent a request to Honduras on August 15, 2025, which was declined on October 20, 2025.[48] ERO chose to wait another four months before taking further action. It sent requests to Brazil, Columbia, and Guatemala on December 26, 2025.[49] As of February 9, 2026, ERO has yet to hear back from any of these three countries.[50]

Respondents are obviously familiar with the six-month presumptively reasonable detention period, yet they chose to take only limited action during most of those six months. The Court finds that although Respondents have now increased their attempts to secure a third country to which Petitioner may be removed, these efforts fall far short of the burden required to render a removal "reasonably foreseeable." As numerous Courts across the nation have found, efforts to contact potential third countries to which a noncitizen might be removed to do not render a removal significantly likely.[51] Respondents have failed to provide any evidence to support their argument that Petitioner is likely to be removed to any of the countries to which Respondents have submitted I-241 Forms on Petitioner's behalf, or to point to even a single country that has given any indication

---

[46] 8 C.F.R. § 241.14.
[47] *Zadvydas*, 533 U.S. at 701.
[48] Dkt. No, 5-1, at 3.
[49] Dkt. No. 5-1, at 3.
[50] Dkt. No. 5-1, at 3.
[51] *See* Phongsavanh v. Williams, No. 4:25-CV-00426-SMR-SBJ, 2025 WL 3124032, at *4 (S.D. Iowa Nov. 7, 2025) (collecting cases).

that they would consider accepting him. Accordingly, Petitioner's removal is not reasonably foreseeable and his detention is unlawful. No exception to his immediate release exist.

<u>**CONCLUSION**</u>

Accordingly, the Petition for Habeas Corpus is **GRANTED**. It is **ORDERED** that:

1. Respondents **RELEASE** Petitioner from custody, under appropriate conditions of release, to a public place by **no later than February 13, 2026, at 2 p.m.;**

2. Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and no less than two hours before his release;

3. The parties shall **FILE** a Joint Status Report **no later than 4:00 p.m. on February 21, 2026**, confirming that Petitioner has been released.

A final judgment will issue separately.

IT IS SO ORDERED.
DONE this 10th day of February, 2026, in San Antonio, Texas.

_____
MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE